UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-165 (DWF/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | PLEA AGREEMENT AND |
| v. ) | SENTENCING STIPULATIONS |
| ) | |
| ABDISATAR AHMED HASSAN, ) | |
| ) | |
| Defendant. ) | |

The United States of America and the defendant, ABDISATAR AHMED HASSAN, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. The agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, charging him with Attempting to Provide Material Support and Resources to a Designated Foreign Terrorist Organization, namely, the Islamic State of Iraq and al-Sham ("ISIS"), in violation of Title 18, United States Code, Section 2339B(a)(1). The defendant fully understands the nature and elements of the crime to which he is pleading guilty pursuant to this plea agreement.

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and agrees that those facts establish his guilt beyond a reasonable

doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

a. From at least October 2024 through February 2025, the defendant, a naturalized citizen of the United States, knowingly attempted to provide material support and resources, including personnel (namely, himself), to the Islamic State of Iraq and al-Sham ("ISIS"), a State Department designated foreign terrorist organization.

b. Specifically, the defendant attempted to provide material support and resources by twice attempting to fly from the United States to Somalia in December 2024, with the intent to join ISIS in Somalia and fight on its behalf. Additionally, the defendant posted dozens of social media posts supporting ISIS and communicated over the internet and by cellphone texts and message exchanges with apparent ISIS recruiters.

c. In early December 2024, the defendant engaged in multiple bi-directional Facebook message exchanges with a self-described "media center" that expressly supported the establishment of an Islamic caliphate in Somalia and elsewhere. In response to one post, in which the media center posed rhetorical questions in Somali encouraging travel to Somalia and joining and fighting on behalf of ISIS, the defendant wrote in Somali, "Friend, who should I contact that is in ISIS controlled area?" The defendant's social media posts also included, among other things, propaganda videos calling for jihad, or holy war, in Somalia, the overthrow of the Somali government and establishment of an Islamic caliphate, logos of the black ISIS flag, and praising and highlighting ISIS and ISIS-inspired terrorist attacks, both globally and in the United States, including the January 1, 2025 New Orleans attacker, who killed 14 individuals, and who the defendant, the day after the attack, referred to as "the legend that killed Americans." The next day, the defendant changed one of his account profile's bi-lines to read, "I only support 1 organization ISLAMIC STATE." In February 2025, the defendant also posted videos of himself while driving his car, one video at various points briefly displaying an unfolded buck-style knife on his lap, and one video holding a homemade black ISIS flag.

d. After directly communicating with ISIS recruiters, the defendant purchased a one-way ticket for nearly $2,100 and attempted to fly from Minneapolis to Garowe, Somalia, via Chicago and Ethiopia, on December 13, 2024, with the intent to join ISIS in Somalia and fight on its behalf. At the airport, however, the airline would not issue the defendant his boarding pass because the defendant did not have the proper travel documents, namely a visa. On December 29, 2024, after purchasing additional travel documents and rebooking the same one-way travel itinerary, the defendant again attempted to fly to Somalia to join ISIS. This second attempt, however, was thwarted by

Customs and Border Protection (CBP) personnel, who interviewed the defendant at the Chicago O'Hare International Airport, before his connecting flight to Ethiopia. During the interview, the defendant admitted that he supported ISIS, regularly views and posts ISIS propaganda on social media, and professed his belief in establishing an Islamic caliphate. Inside the defendant's only carry-on bag, CBP officers observed the defendant's high school diploma, birth certificate, and naturalization certificate.

e.    During the interview, CBP officers also inspected the defendant's cell phones and observed a significant quantity of pro-ISIS social media material, direct messages with an ISIS media wing, and texts with an apparent ISIS recruiter, whom the defendant referred to as "commander" and "uncle," about his pending travel to Somalia and referencing the "battlefield." CBP officers also located two downloaded .pdf documents regarding sniper skills and sniper trading within a social media messaging app channel displaying the ISIS flag as a logo.

f.    The FBI spoke with the defendant's workplace supervisor and learned that the defendant told his supervisor in October 2024 that he would be quitting his job in December 2024 to move to Somalia and wanted to liquidate his 401(k) savings balance. The defendant's supervisor offered the defendant a leave of absence, but the defendant declined. The FBI learned from a review of bank records, that the defendant liquidated his 401(k) and received a bank deposit of nearly $1200 on January 2, 2025.

g.    The FBI arrested the defendant on a complaint-warrant on February 27, 2025, and they located and seized two cellphones and the folding buck-style knife, noted above, on the defendant's person. The FBI also found the homemade black ISIS flag, also noted above, in the defendant's vehicle. During a warrant-authorized search of the defendant's cellphones, the FBI located, among other things, various .pdf files, some in Arabic, consisting of instruction manuals on making explosive C-4, explosive urea nitrate, explosive hexamine, explosive HMTD, and ammunition. The cellphones also revealed a messaging app exchange from December 21, 2024 wherein the defendant stated, "I will become ISIS straight away." Additionally, the cellphones revealed numerous internet searches between December 2024 and February 2025, including such terms as: "Somalia weapons," "gun ranges," "isis areas," "urea fertilizer," and "isis supporter America." The cellphones search also showed that at least twice in late February 2025, the defendant had accessed a website featuring an interactive map entitled, "The Islamic State Select Worldwide Activity," which highlighted ISIS activity, including ISIS-claimed attacks worldwide, as well as posts of ISIS videos, news stories, audio statements, and messages.

h.      The defendant admits and agrees that at all times relevant to the charge in the Indictment, he knew ISIS was a designated terrorist organization, and that ISIS had engaged and was engaging in terrorist activity and terrorism.   The defendant also admits that he acted voluntarily in attempting to provide material support to ISIS as outlined above.

3.      **Waiver of Pretrial Motions**.  The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case.  As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

4.      **Waiver of Constitutional Trial Rights**.  The defendant understands that he has the right to go to trial.  At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination.  The defendant understands that he has the right to an attorney at every stage of these proceedings, and one has been appointed by the Court to represent him.  The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial.  By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel.  The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences**.  The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.  If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.  The defendant has discussed with his attorney the potential punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and nevertheless still wants to plead guilty in accord with the terms of this plea agreement.

6.    **Statutory Penalties**.  The parties agree that Count 1, charging Attempting to Provide Material Support and Resources to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1), is a felony offense that carries the following statutory penalties:

      a.  a maximum term of 20 years' imprisonment, a Class C felony. (18 U.S.C. §§ 2339B(a)(1), 3559(a)(3); 26 U.S.C. § 5871);

      b.  a supervised release term of up to life.  (18 U.S.C. § 3583(j));

      c.  a fine of up to $250,000. (18 U.S.C. §§ 3571(b)(3)); and

      d.  a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

7.    **Guidelines Calculations**.  The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines.  The parties also acknowledge the Court will consider the United States Sentencing Guidelines in

determining the appropriate sentence, and the parties stipulate to the following Guidelines calculations.  Notwithstanding the following stipulations, however, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background.

a. **Base Offense Level**.  The parties agree that the base offense level is 26.  USSG § 2M5.3(a).

b. **Specific Offense Characteristics**.  The parties agree that because the offense involved providing material support or resources with the intent that they would be used to commit or assist in the commission of a violent act, the base offense level is increased by 2 levels.  USSG § 2M5.3(b)(1)(E).  The parties agree that no other specific offense characteristics or adjustments apply.

c. **Chapter Three Adjustments**.  The parties agree that because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, the base offense level is increased by 12.  USSG § 3A1.4(a).  The parties agree that, other than acceptance of responsibility, no other Chapter Three adjustments apply.

d. **Acceptance of Responsibility**.  The United States agrees to recommend that the defendant receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).  As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the United States agrees to recommend that the defendant receive an additional one-level reduction pursuant to USSG § 3E1.1(b).  Whether these reductions are granted shall be determined by the Court in its discretion.  The defendant understands and agrees, however, that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change-of-plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant does not engage in any conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this plea agreement, however, limits the right of the government, pursuant to USSG § 3E1.1 and/or § 3C1.1, to seek denial of a reduction for acceptance of responsibility, an upward adjustment for obstruction of justice,

or advocate for a longer sentence, should the defendant engage in any conduct inconsistent with acceptance of responsibility.

After applying all adjustments, the **adjusted total offense level is 37 (26+2+12-3)**.

e. **Criminal History Category**. Because of the application of USSG § 3A1.4(a), the defendant's Criminal History Category is **VI**. USSG § 3A1.4(b).

f. **Guidelines Range**. If the adjusted total offense level is 37, and the criminal history category is VI, the advisory Guidelines range is 360 months to life imprisonment. Because the offense of conviction carries a statutory maximum of 240 months, however, the applicable Guidelines range is 240 months' imprisonment. USSG § 5G1.1(a).

g. **Fine Range**. If the adjusted total offense level is 37, the applicable fine range is $40,000 to $400,000. USSG § 5E1.2(c)(3).

h. **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100.00 for each count, for a total of $100. USSG § 5E1.3. The defendant understands and agrees that this special assessment is due and payable at the time of sentencing.

i. **Supervised Release**. The Guidelines provide for a term of supervised release of at least one year up to life. USSG §§ 5D1.2(a)(2) and (b)(1). The defendant understands that the government may seek a lifetime term of supervised release.

8. **Discretion of the Court**. The foregoing stipulations bind the parties but do not bind the Court. The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different

from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.   **Sentencing Recommendation and Departures**. The defendant may recommend whatever sentence he deems appropriate. Based on the concessions made herein, the United States agrees that it shall not advocate for a sentence greater than 204 months' imprisonment and a supervised-release term of up to life, unless the defendant engages in any conduct inconsistent with acceptance of responsibility, as noted above in Paragraph 7.d.

The parties also reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, however, neither party will have the right to withdraw from the plea agreement, and the defendant will have no right to withdraw his guilty plea.

10.   **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

11. **Forfeitures**.   Based on the defendant's conviction for 18 U.S.C. § 2339B, and because the defendant engaged in planning an act of international terrorism, as defined in 18 U.S.C. § 2331, against an international organization or foreign government,  the defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(G), in conjunction with 28 U.S.C. § 2461(c), all his assets, foreign and domestic, including, but not limited to, the following:

   a.   a Dell Chromebook II 3180, model P26T, SN HYRYGH2;

   b.   a blue Samsung cell phone;

   c.   a red Apple SE cell phone; and

   d.   any other assets or items belonging to the defendant that were seized on or about February 27, 2025 including, but not limited to, a black Wartech folding knife, a black pocket knife labeled "buck" with fabric sheath, a black "Hypertough" box cutter, a stitched black fabric flag with white inscription, assorted clothing, and other documents, papers, and effects.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges and consents to its forfeiture. The defendant further waives any right he would otherwise have to receive notice of the forfeiture of the

Page 9 of 12

property described above.

12.    **Waiver of Freedom of Information Act and Privacy Act**.    In exchange for the concessions of the United States made herein, the defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

13.    **Waiver of Appeal and Postconviction Petition**.  The defendant hereby waives the right to appeal any non-jurisdictional issues.  This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.  The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment greater than 204 months.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.  Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this plea agreement that are both substantive and have retroactive effect.  For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the

offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except the United States may appeal the substantive reasonableness of a term of imprisonment less than 204 months.

14.   **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that he has read the entire agreement and has reviewed every part of it with his counsel; (b) that he fully understands this plea agreement; (c) that he is pleading guilty because he is in fact guilty of committing the crimes to which he is pleading guilty; (d) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (e) that he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (f) that he has entered into this plea agreement freely, knowingly, and voluntarily; and, (g) that his decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free

will and not the result of any threats or coercion directed at him or anyone connected with him.

Dated: ~~SEPTEMBER 29, 2025~~                  JOSEPH H. THOMPSON
                                               Acting United States Attorney


                                          BY: BENJAMIN BEJAR
                                               Assistant United States Attorney
                                               District of Minnesota


Dated: ~~9-29-25~~                            ABDISATAR AHMED HASSAN
                                               Defendant


Dated: ~~9-29-25~~                            MANNY ATWAL
                                               JAMES BECKER
                                               Assistant Federal Defenders
                                               Federal Defenders Office
                                               Attorneys for Mr. Hassan