UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-165 (DWF)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S SENTENCING |
| v. | ) | MEMORANDUM |
| | ) | |
| ABDISATAR AHMED HASSAN, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing for the defendant's conviction of attempting to provide material support and resources to a designated foreign terrorist organization (FTO), namely, the Islamic State of Iraq and al-Sham (ISIS), in violation of 18 U.S.C. § 2339B(a)(1). In accord with the Plea Agreement, (ECF 40), and for the reasons stated herein, the United States respectfully recommends a sentence of 204 months' imprisonment, slightly below the applicable Guidelines range of 240 months, as a sentence that is sufficient but not greater than necessary to comport with the Section 3553(a) sentencing factors. The United States also recommends a 15-year period of supervised release, with conditions that include mental health counseling and treatment and anti-extremism programming.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

The United States agrees with, and incorporates by reference, the facts from the "Offense Conduct" section of the PSR, ¶¶ 5-14, as well as the facts from the Plea

Agreement, ECF 40, ¶ 2. The defendant's efforts to join ISIS—a foreign terrorist organization so-designated by the United States Department of State since at least 2014—are readily characterized as persistent, calculated, and undeterred. His planned acts in dogged pursuit of his singular goal underscored his ideological drive and purpose behind his: lying to his family, employer, and federal agents about his true intentions; liquidating assets and quitting his steady, decent-paying job; regularly and frequently communicating on social media with ISIS media and recruiters and obeying their command and control; immersing himself in and regularly consuming ISIS social media and propaganda videos (some of them extremely violent); researching and learning skills designed primarily to support or engage in violent acts; repeatedly touting ISIS ideals, messages, and symbolism, including the establishment of a caliphate and waging jihad against non-believers or perceived enemies; and praising and celebrating an ISIS-inspired attack that resulted in the killings of 14 innocent American civilians in New Orleans during 2025 New Year's Eve celebrations.

His endeavors culminated in the defendant twice attempting to fly from Minneapolis on a one-way ticket (costing nearly $2100) to Garowe, Somalia, in December 2024 (a region where ISIS was active), to join and fight on behalf of ISIS on what he referred to as the "battlefield." But even when his two travel attempts were thwarted—the defendant's support for ISIS remained undeterred and even appeared to escalate in the creation and posting of his own ISIS-inspired videos with a violent undertone. The totality of the facts and circumstances and the Section

3553(a) sentencing factors well warrant a sentence of 204 months' imprisonment and 15 years' supervised release.

Law enforcement first learned of the defendant's support for FTOs in May 2024 when New York Police counterterrorism agents notified the FBI that the defendant was utilizing TikTok and Instagram social media accounts to post content in support of al-Shabaab—a State Department designated FTO since 2008.[1] The FBI's subsequent investigation initially showed that the defendant's "Abdisatar Ahmed" Facebook account also posted multiple videos supportive of al-Shabaab and multiple video excerpts of speeches by deceased al-Qaeda cleric Anwar al-Awlaki.[2] Additionally, the account had posts of al-Shabaab propaganda videos and videos touting al-Shabaab and ISIS symbolism—such as the ubiquitous black flag with the white emblem that is commonly known to represent ISIS.[3] The defendant's Abdisatar Ahmed Facebook account was apparently suspended by Facebook in July 2024 for posting extremist content.

About two months later in September 2024, however, the FBI learned that the defendant was using another Facebook account, with the handle "Qays Man." Public posts on this account also included numerous al-Shabaab propaganda videos, expressed support for ISIS, praised ISIS militants as "lions of jihad," and reposted

---

[1] Much of the factual background is derived from the Complaint affidavit and various search warrant affidavits underlying this matter as well as the PSR and Plea Agreement.

[2] Anwar al-Awlaki was a Yemeni-American cleric who served as the leading English language propagandist for al-Qaeda. Awlaki was killed in a drone strike conducted by U.S. Forces in 2011.

[3] For example, in one video the defendant posted accompanying text regarding having "raised the black flag." In another video, the defendant added a caption referring to the black flag as "The flag of Islam."

videos produced by al-Shabaab's Al-Kataib Media Foundation, the known media-wing of al-Shabaab. One particularly violent Al-Kataib video reposted by the defendant featured the murder of a captive handcuffed Kenyan soldier who is shown being shot from behind by an al-Shabaab militant. The defendant added an Arabic caption to the post that translated as, "The Islamic State in East Africa is remaining."



In December 2024, the defendant posted a video on his *Qays Man* account that included a map of northern Puntland, Somalia, (of which Garowe is the capital city) along with a black and white-emblemed banner known to be used by the Somalia-based affiliate of ISIS.

4



The defendant also used the *Qays Man* account to regularly exchange multiple bi-directional Direct Messages with the *Manjaniq Media Center* Facebook account, which publicly touts itself as "*a media organization that nurtures the righteous youth of the Islamic Caliphate*" and regularly posts propaganda and symbols (such as the ISIS flag) supportive of the creation of an Islamist government and of ISIS violence in Puntland and elsewhere in Somalia.   For example, in December 2024 alone, the defendant had nearly 200 bi-directional message exchanges with the *Manjaniq Media Center* Facebook account, including 36 messages exchanged on December 27, 2024, two days before the defendant's second attempted flight from Minneapolis to Somalia.

In response to a *Manjaniq Media Center* account post in late November 2024, referencing "*the calling of Allah*" and posing several rhetorical questions in Somali, arguably encouraging Somali-speaking individuals to travel and fight on behalf of ISIS, (e.g., "fighting the enemy"), the defendant responded in Somali in early December, "*Friend, who should I contact with that is in ISIS controlled area?*"

The FBI also learned that the defendant utilized a TikTok account with the handle *@expand_my_state1*, and featured a profile photo to match the profile photo of the *Qays Man* account. The *@expand_my_state1* account also included Arabic text which translated to "*Brother Abdisatar*," and additional Arabic text which translated to "*The Islamic State is remaining and remaining.*"

### *The defendant's first attempted travel to Somalia*

On December 13, 2024, the defendant traveled to Minneapolis-St. Paul International Airport ("MSP") after having purchased a one-way ticket for nearly $2100 to fly to Garowe, Somalia, the capital city of the Puntland state. The itinerary scheduled travel from MSP to Chicago O'Hare International Airport to Addis Ababa, Ethiopia to Garowe, with no return flight to the United States. FBI agents conducted physical surveillance of the defendant at MSP where he had only one carry-on roller bag and no other luggage. After observing the defendant speak with an airline employee at the ticketing area, agents observed and overheard the defendant on a phone call saying that he did not have a visa for Somalia, and he left MSP.

FBI agents spoke with the airline employee and learned that when the defendant tried to check in for his flight to Somalia, she told him he could not travel

to Somalia without the proper travel documents. The defendant asked if she could rebook him for a flight next week, but she told him he would need to rebook through his travel agency, and he left the terminal.

*The defendant's second attempted travel to Somalia*

The defendant purchased a travel visa to Somalia for $64 from the travel agency and rebooked the same travel itinerary to Garowe for December 29, 2024, again with no return flight to the United States. On December 29, FBI Agents again surveilled the defendant arrive at MSP, check in for his one-way flight, and board and depart MSP to Chicago O'Hare. Prior to boarding, a Customs and Border Protection ("CBP") Officer fluent in Somali overheard the defendant talking on the phone with someone in Garowe, whom he referred to as "Abti," which means "uncle" in Somali.

*The CBP interview of the defendant and inspection of his cell phones*

After arriving at Chicago O'Hare, CBP Officers with CBP's Tactical Terrorism Response Team interviewed the defendant before his outbound international flight to Addis Ababa, Ethiopia. The interview was audio-video recorded. During the interview, the defendant stated he was traveling to Somalia to visit his uncle, Ali Sheick Abdulkadir. Later during the interview, however, the defendant admitted that Abdulkadir was not his uncle, and they had never met. The defendant did not know what Abdulkadir did for work or where he resided and claimed he had only been introduced to Abdulkadir recently through the travel agency used to book his

7

ticket. The defendant stated he did not have specific plans and that Abdulkadir would show and introduce him to traditional life and Somali culture.

Although the defendant had a one-way travel ticket, he claimed he was set to return in the middle of January 2025, from Mogadishu, Somalia to Doha, Qatar, and then to the United States. The defendant admitted, however, he was unsure how he would get from Galkayo to Mogadishu, an approximate 357-mile trip that would take over 13 hours to travel by vehicle. He stated that he might buy a domestic Somali airplane ticket or Abdulkadir might drive him.

The defendant denied he was going to meet anyone other than Abdulkadir, denied having any other contacts in Somalia, denied traveling for any other purpose, and denied using any social media. When asked if his parents knew about his planned trip to Somalia, the defendant stated that his father knew about it. These statements were all false.

CBP inspected the defendant's carry-on roller bag—his only luggage —and found the defendant's high school diploma, birth certificate, and naturalization certificate. When told by CBP Officers that these documents were indicative of a stay longer than one month, the defendant claimed that he had forgotten that he had the documents in his bag.

During CBP's preliminary inspection of the defendant's two cellular phones, CBP discovered extensive ISIS propaganda, including ISIS training and recruitment materials, and a text message in response to the defendant's inquiry of interest from an online school teaching gunsmithing and drone technology skills and techniques.

8

Contrary to the defendant's denial, CBP's inspection showed that the defendant extensively used social media, including a Telegram account with a display name of *Qays Man* that contained downloaded files labeled, *"The life of a Mujahideen," "The month of Jihad," "The return of the Caliphate,"* and *"The path of jihad."* Some of the downloads originated from the al-Hayat Media Center, a known media-wing of ISIS. CBP also found a Telegram channel the defendant created on December 18, 2024, using the ISIS flag as the channel's logo. The defendant had links in this channel containing PDF documents entitled, *"Illustrated Manual of Sniper Skills"* and *"Sniper_Trading_Workbook_Step_by."*

CPB Officers also noted a text message sent by the defendant, on or before April 1, 2024, in which he wrote, *"All I need is jihad."* The defendant's phones also showed he had shared pro-ISIS views on his TikTok account, which displayed the ISIS flag in the profile. His phones also showed Facebook Direct Messages exchanged with the *Manjaniq Media Center* account, in which he addressed the *Manjaniq Media Center* account user as *"commander"* and *"uncle."* In a message exchange on or about December 5, 2024, the *Manjaniq Media Center* told the defendant *"The barracks are fine,"* to which the defendant responded, *"I will wait in a safe place until you talk to me."* In a another message on the same day, the defendant stated (as translated) *"Bosses and garowe are all children, the battlefield is now between khalbeir and armo,"* which the FBI assessed were references to the Somali cities of Boosaaso and Garowe, and the districts/villages of Kalabayr and Armo, both of which are located in

9

the Bari region of Puntland in Somalia, where ISIS was at the time actively engaged in armed conflict with Puntland Defense Forces.

When asked about the information supportive of ISIS found on his phone, the defendant initially claimed that those were past views and that he does not share them now. After being advised by CBP Officers that the Telegram channel featuring the ISIS flag was created only eleven days earlier on December 18, 2024, and that his ISIS chat is still active, the defendant then admitted that he is in fact an ISIS supporter and consumes and disseminates ISIS propaganda. He told CBP Officers that Muslims should be joined as one country in a caliphate, stating it was every Muslim's dream. He further claimed that hypothetically, if offered to join a jihadi group, he would do his duty as a Muslim but claimed he would not hurt people. The defendant stated he supports the struggle of his Muslim brothers, but he is not a terrorist.

The defendant claimed he started consuming ISIS propaganda after the Israel-Hamas war began (on October 7, 2023). When asked why he supports ISIS but not other groups, such as al-Shabaab, Hezbollah, or the Taliban, the defendant claimed the Taliban are too democratic, al-Shabaab is an offshoot of the Taliban, and Hezbollah is a Shiite group, and he is Sunni. The defendant noted that prior to the U.S. withdrawal from Afghanistan, the Taliban made a truce and agreed not to kill U.S. soldiers during the withdrawal. He viewed working with the U.S. military as going against God, and again asserted that ISIS is creating the true caliphate. He further stated that he believed eventually Islam will win, and an Islamic caliphate

10

will rule, as it is written in the Quran. When asked how he planned on carrying out God's will, the defendant replied, "by implementing the Sharia" (i.e., Islamic law). Pointedly, the defendant asserted that he does not believe in democracy, and "what America thinks is [sic] terrorists is actually justice, and what America thinks is justice is wrongdoing." (PSR ¶ 11)

Due to the length of the interview, the defendant missed his flight to Addis Ababa, Ethiopia, and he took a late-evening flight from Chicago back to MSP on December 29, 2024.

*The defendant continues and even ramps up his rhetoric and support for ISIS*

Despite being twice thwarted from traveling to Somalia, the defendant nonetheless continued, and even ramped up, his pro-ISIS support and rhetoric. For example, on January 3, 2025, the FBI observed that the defendant's *@expand_my_state1* TikTok account changed the profile photo to that of the defendant apparently resembling a mujahadeen fighter with Arabic text which translated to "*Somalia,*" as well as English text stating "*I only support 1 organization ISLAMIC STATE,*" which he had recently changed from "*I only support 1 organization ISLAM.*"



11

Even more concerning, the FBI observed that the defendant also posted a video on his *@expand_my_state1* TikTok account on the evening of January 1, 2025, with an image of Shamsud-Din Jabbar, the perpetrator of the ISIS-inspired terrorist attack during the early morning hours of January 1, in New Orleans, Louisiana, which killed 14 innocent civilians and injured dozens more. Open-source outlets reported that Jabbar drove a pickup truck, flying the ISIS flag, through street barricades and into a crowd of pedestrians, and then opened fire on police before being killed in an exchange of gunfire. Investigators later learned that Jabbar had posted multiple videos claiming to have joined, or otherwise been inspired by, ISIS. Along with the image of Jabbar, the video posted by the defendant also contained a nasheed[4] audio that included rapid gunfire and other sounds of a militant nature. Most disturbing, however, the defendant added a caption to the post in Somali that translated to *"The Muhaajid that killed the Americans."* In response to another TikTok user's supportive comment on the video, the defendant replied in Somali, *"Amen, it is the legend that killed Americans yesterday."* In response to yet another TikTok user's comment on the video, the defendant replied in Arabic, *"He is the man who destroyed the Americans yesterday."* And in response to an additional comment from another TikTok user, the defendant replied in Somali, *"He ran over 45 people and open fire on police."*

---

[4] A "nasheed" is a work of vocal music, often sung *a cappella*, and features lyrics about Islamic beliefs, history, morality, or praise for the Prophet Muhammad.

12



The FBI also learned of yet another social media account used by the defendant in February 2025 to tout his unwavering support for ISIS.  On or about February 4, 2025, the defendant posted a video on his *@jundullah032* TikTok account containing a nasheed audio and a digital poster from Al Saif Media, a known pro-ISIS media outlet.  The digital poster (depicted below) showed an image of President Trump engulfed in flames, positioned above a social media post by President Trump, which stated in part "a message to ISIS and others who might attack Americans," that "WE WILL FIND YOU AND WE WILL KILL YOU."  The Al Saif Media digital poster, apparently in response to President Trump's post, stated, "WHO ARE YOU TO HUNT US? - WE ARE COMING TO SLAUGHTER YOU!"  The digital poster's text also called for "Muslims around the world" to "Strike the enemies of Allah and the members of the kufr coalition," and provided a quote attributed to a verse from the Quran: "Kill them wherever you find them," followed by a hashtag of "#letsSlaughter" at the bottom of the digital poster.

13



The defendant also posted another video on his *@jundullah032* account the same day that contained a nasheed audio and an image entitled "*Islamic State Global Operations - January 2025*," which included figures for the number of "*Claimed Attacks*" and "*Unclaimed Attacks*."

On the early morning of February 21, 2025, the defendant posted four self-created videos to his *@jundullah032* account, which depicted the defendant driving his Nissan vehicle with a distinct crack along the windshield, with various nasheed audios playing. In one video, which included an Arabic caption, "*The world now*," an unfolded buck-style knife is seen sitting on the defendant's lap at various points in the video (as depicted below).

15



In another posted video, the defendant is holding an ISIS flag while driving his vehicle, as depicted below.



On February 26, 2025, FBI personnel surveilled the defendant driving his Nissan Sentra (with the cracked windshield) while holding a black ISIS flag with white writing, that appeared to match the ISIS flag observed in the video the defendant posted a few days before. Surveillance personnel noted that the defendant held the ISIS flag in his right hand during his entire commute.

On February 27, 2025, FBI personnel again observed the defendant holding the same black ISIS flag as depicted in the video, as he drove to work. When FBI agents arrested the defendant that day after he arrived at his workplace, agents recovered the ISIS flag from the vehicle, a folding buck-style knife on the defendant's person that appeared identical to the knife seen in the posted TikTok video described above, and two cell phones in his vehicle.

*The search of the defendant's cell phones reveals material designed primarily to support ISIS and engage in violent acts*

During warrant-authorized searches of the defendant's cell phones recovered from his vehicle incident to his arrest, FBI agents discovered a number of *.pdf* documents (some in Arabic) related to manufacturing explosives, ammunition, and firearms, some examples of which are depicted below:

16



*(Translated: "Explosive Dough – How to Make C-4")*



*(Translated: Simple Explosives Series 3 – Preparing the Explosive Material Urea Nitrate)*



*(Translated: "Simple Explosives Series – Preparing the Explosive Hexamine")*



The defendant's cell phones also revealed various internet searches that reflected knowledge of and support for ISIS, and interest in acts of terrorism in connection with ISIS. For example, on the same day in November 2024 that he

booked his first one-way trip to Somalia, the defendant conducted a Google search for "ISIS-Somalia" and "caliphate maps."   Just before his December 13, 2024 flight attempt, the defendant researched the distance between Garowe and Dangorayo, which borders on ISIS-Somalia's territory (and is contrary to what the defendant had told agents about his intended travel in Somalia).   Additionally, in a Telegram exchange on December 21, 2024, between the defendant's *Qays Man* Telegram account and a *WaHshi* Telegram account, discussing ISIS and al-Shabab, *WaHshi* asks, ". . . who made Abdisatar to join ISIS," and the defendant replies with a string of messages including, "I will become ISIS straight away."

The content from the defendant's cell phones also shows that even after his two travel attempts were thwarted, the defendant continued to research and consume ISIS and extremist-content online including, as examples, the following:

- December 17: "Somalia weapons" and "isis Somalia news";
- January 4:  "gun ranges";
- January 13: "isis areas";
- January 14: "terrorist America";
- February 5: "urea fertilizer"; and
- February 19: "isis supporter America".

Review of the defendant's cell phones also showed that the defendant accessed an interactive map of "The Islamic State, Select Worldwide Activity" during the evening of February 23, 2025 and during the early morning of February 27, 2025. The interactive map featured attacks claimed by ISIS, ISIS news stories, and ISIS

19

videos and audio statements/messages.  Among the items the defendant accessed on the interactive maps are:

- Attack on Puntland Forces in Bari Region (February 13, 2025);

- Abdi Nur Charged for Joining Islamic State in Syria (November 24, 2014);

- Mahad Abdiaziz Abdirahman Arrested for Mall of America Attack (November 12, 2017);

- Muhammad Masood Arrested for Attempting to Provide Material Support to Islamic State (March 19, 2020);

- Stabbing in St. Cloud, Minnesota (September 18, 2016);

- Shooting in San Bernardino, California (December 4, 2015);

- Infographic from the Islamic State: "The Campaign of the Soldiers of the Caliphate against the Apostate Al-Shabab Movement Militias in the Eastern Regions of Somalia (February-December 2023)" (February 1, 2024);

- Al-Naba #428: "Special Source: Soldiers of the Caliphate Take Control of Wide Territory in Eastern Somalia After a Bloody Battle with Al-Qaeda Militias" (February 1, 2024);

- Mohamed Abdi Ali Arrested for Planning Terror Attack in Kenya (April 29, 2016)

- Three Kenyans Arrested for Attempting to Join Islamic State (April 7, 2023); and

- Audio Message from the Islamic State's Abu Hudhayfah al-Ansari: "And Kill Them Wherever You Overtake Them" (January 4, 2024)

In April 2025, a grand jury returned a one-count Indictment against the defendant charging him with attempting to provide material support and resources to a designated foreign terrorist organization, namely ISIS, between about September 29, 2024 through about February 27, 2025, in violation of 18 U.S.C. § 2339B(a)(1),

which carries a statutory maximum of 20 years' imprisonment. (PSR ¶¶ 1, 72; ECF 22)

On September 29, 2025, the defendant pleaded guilty as charged in the Indictment pursuant to an executed Plea Agreement filed with the Court. (PSR ¶ 2; ECF 22, 39, 40) The parties stipulated to and agreed that: the base offense level is 26, USSG § 2M5.3(a) (ECF 40, ¶ 7.a.); because the offense involved providing material support or resources with the intent that they would be used to commit or assist in the commission of a violent act, the base offense level increased by 2 levels, USSG § 2M5.3(b)(1)(E) (Id. ¶ 7.b.); because the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, the base offense level increased by 12 levels, USSG § 3A1.4(a) (Id. ¶ 7.c); and the government would recommend a decrease of 3 levels for the defendant's acceptance of responsibility, USSG § 3E1.1 (Id. ¶ 7.d); all resulting in an adjusted total offense level of 37 and a criminal history category of VI, USSG § 3A1.4(b) (Id. ¶ 7.e). (PSR ¶ 2)

On January 28, 2026, the United States Probation Office issued a final PSR, finding, in direct accord with the Plea Agreement, the same base offense level, (PSR ¶ 19), specific offense characteristics, (Id. ¶ 20), victim-related adjustment, (Id. ¶ 21), and acceptance of responsibility adjustment, (Id. ¶¶ 26, 27), for a total offense level of 37, (Id. ¶ 28), and resulting criminal history category of VI, (Id. ¶ 33), yielding an advisory Guidelines' range of 360 months to life imprisonment, (Id. ¶ 73), and a supervised-release period of up to life, (Id. ¶ 79). Although the defendant's criminal history score is 0, because the parties agreed that "the offense is a felony that

involved, or was intended to promote, a federal crime of terrorism," under USSG § 3A1.4(a), the criminal history category is VI, in accord with USSG § 3A1.4(b).  (PSR ¶ 33; ECF 40, ¶ 7.e.)

Because 18 U.S.C. § 2339B carries a statutory maximum of 20 years, the Guidelines' range becomes 240 months.  USSG § 5G1.1(a). (PSR ¶¶ 72, 73)  The Guidelines range determined by the PSR did not differ from that contemplated by the Plea Agreement.  (PSR ¶ 78; ECF 40, ¶ 7.f.)

## ARGUMENT

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007).  "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  *Id.* at 49-50.  Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities."  18 U.S.C. § 3553(a).  But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate

sentence. *United States v. Masood*, 133 F.4th 799, 809 (8th Cir. 2025); *United States v. Dennis*, 131 F.4th 913, 917 (8th Cir. 2025).

## A.  The Guidelines Calculations

The United States agrees with the calculated total offense level of 37, criminal history category of VI, and effective Guidelines range of 240 months.  For the following reasons, and in accord with the Plea Agreement, (ECF 40, ¶ 9), the United States respectfully recommends a sentence of 204 months' imprisonment and a supervised-release term of 15 years, as a sentence that is sufficient but not greater than necessary to comport with the § 3553(a) sentencing factors.

## B.  The Section 3553(a) Factors

A consideration of the § 3553(a) factors amply warrants a sentence of 204 months' imprisonment for the defendant twice attempting to travel to Somalia to join and fight on behalf of ISIS, as well as for his persistent, calculated, and undeterred efforts (as described in detail above) to achieve his goal of providing material support and resources to the designated foreign terrorist organization ISIS.

### 1.  Nature and Circumstances of the Offense

As described in detail above, the defendant's efforts to travel to Somalia to join and fight on behalf ISIS were nothing other than persistent, calculated, and undeterred.  The defendant readily consumed and immersed himself in ISIS propaganda, symbolism, and beliefs for over two years, promoting and praising ISIS-inspired violence, attacks, and deep-seated beliefs.  He regularly and frequently communicated on social media with ISIS media and recruiters and followed their

23

command and direction.  He lied to his family, his employer, and to federal agents in pursuit of his singular goal.  He liquidated his assets, quit his steady and decent-paying job, spent significant money on the one-way travel tickets, and concentrated all his efforts on getting to Somalia to join and fight on behalf of ISIS.

During his December 2024 CBP interview, he actually criticized the Taliban as *too democratic*, expressing his disdain for their supposed agreement not to shoot American soldiers during the withdrawal from Afghanistan. He viewed working with the U.S. military as going against God, and he pointedly asserted that he does not believe in democracy, and "what America thinks is [sic] terrorists is actually justice, and what America thinks is justice is wrongdoing."

The defendant was so driven by ISIS ideology and messaging that even after his two attempts to travel one way to Somalia from Minneapolis were thwarted, he not only continued his propagation of support and rhetoric for ISIS, but he arguably ramped up his support and violent rhetoric.  For example, on the very same evening of the horrific New Year's Day 2025 ISIS-inspired attack in New Orleans, in which 14 innocent civilians were murdered and numerous others were injured, the defendant lavished praised on the attacker, calling him "legend," referring to him as a "*Muhaajid*," saying "amen" that he "killed Americans," and seemingly celebrating that he "destroyed Americans" and "*ran over 45 people and open[ed] fire on police.*"

The defendant also readily continued to endorse and tout his support for ISIS violence through his various social media accounts, calling for the slaughter and killing of the supposed "enemies of Allah" and derogatory "kufr."   He continued to

24

follow and track ISIS attacks, continued to research and gather materials to support ISIS-inspired violence, such as, sniper manuals and various highly explosive-making and ammunition-making manuals, gunsmithing, and drone technology.  And even more disturbingly, he created his own ISIS-inspired videos (just prior to his arrest) of himself holding the ISIS flag while driving his vehicle with an open buck-style knife on his lap—eerily parallel in certain respects to the New Orleans attacker, whom he lavished praise upon for his terroristic acts that killed 14 civilians and injured dozens more.  The defendant had the knife on his person and the ISIS flag inside his vehicle when he was arrested at his workplace.

That the defendant remained determined and undeterred and continued to research and consume ISIS and extremist-content online even after his two travel attempts were thwarted, is also evidenced by the significant volume of content found on the defendant's cell phones seized incident to his arrest, which included, among other things, searches for highly explosive "urea fertilizer," weapons, ISIS violence and attacks, and other terrorist activities.

The nature and circumstances of the defendant's offense readily warrants a sentence of 204 months' imprisonment.

### 2.    History and Characteristics of the Defendant

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and characteristics.  The defendant, who is only 23 years old, has no prior criminal history, no substance use or alcohol consumption history, no significant mental or emotional health issues, a

steady and consistent work and employment history, graduated from high school, and has taken some college level courses.  (PSR ¶¶ 51-67)   The defendant did, however, experience a very difficult childhood, being born in a refugee camp in Kenya, to which his parents fled because of civil war and strife in Somalia.  (PSR ¶ 38)  Additionally, the defendant experienced complications at birth due to poor health conditions and lack of medical support in the refugee camp, but fortunately they have not impacted his physical condition in his early adulthood.  (PSR ¶¶ 41, 50)  The defendant and his family emigrated to the United States when he was 12 years old, were able to reside close to family and social networks, and his father obtained decent and steady housing and professional employment.  (PSR ¶¶ 39, 44) The defendant has close familial ties and regular contact with his family members.  (PSR ¶ 40)

Given the nature of the offense, the defendant could likely benefit from some mental and emotional health programming and anti-extremism programming and mentorship while incarcerated at BOP and while on supervised release.

### 3.    Needs of Sentencing and Other 3553(a) Factors

A sentence of 204 months, 36 months below the effective Guidelines range of 240 months, is amply warranted by the needs of sentencing and other Section 3553(a) factors.  While some mitigating factors exist, such as the defendant's difficult birth and childhood in impoverished conditions in a refugee camp, the defendant appears to have adjusted well physically and emotionally.  But several aggravating factors also exist that warrant consideration and weight such as the defendant's persistent and undeterred efforts to leave the country, travel to Somalia, and join and fight on

26

behalf of ISIS, a brutal and ruthless designated foreign terrorist organization, responsible for thousands of deaths of innocent people. Additionally, the defendant's radicalization appears to have escalated even when his attempts to travel to Somalia were thwarted—heaping praise on a murderous terrorist, researching and gathering materials on sniper skills, manufacturing explosives and ammunition, repeatedly calling for the establishment of a caliphate and the slaughter of non-believers and perceived enemies, and creating his own ominous ISIS-inspired videos displaying a buck-style knife, while driving, and displaying the ISIS flag.

Given the recency and pervasiveness of these significant and seemingly entrenched acts, and his undeterred vehement support for ISIS—the defendant's arrest occurring only 14 months ago—it is difficult to square the supposed complete transformation the defendant claims to have experienced and his desire to now want to only engage in learning about civics, desire for world peace, and abandonment of promoting extreme violence, based on reading books, staying healthy, and being incarcerated in the county jail. (PSR ¶ 17)

On balance, a sentence of 204 months, 36 months below the applicable Guidelines range of 240 months, would serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to avoid sentencing disparities, and to protect the public from further crimes of the defendant. *See United States v. Godfrey*, 668 F. App'x 201, 203 (8th Cir. 2016) (per curiam) ("Congress specifically made general deterrence an appropriate consideration . . . and [the Eighth Circuit has]

described it as 'one of the key purposes of sentencing.'") (quoting *Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010)).

**CONCLUSION**

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 204 months' imprisonment, with 15 years' supervised release, including conditions that the defendant participate in mental-health as well as anti-extremism programming and counseling while serving his sentence and while on supervised release, and that he be screened for Re-Entry Court following his release from BOP.

Respectfully submitted,

Dated: <u>April 15, 2026</u>

DANIEL N. ROSEN
United States Attorney

<u>/s/ *Benjamin Bejar*</u>
BY:  BENJAMIN BEJAR
Assistant United States Attorney
District of Minnesota